UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JESSE VELEZ, | Case No.: EDCV 16-01304-JDE |
| Plaintiff, | |
| v. | MEMORANDUM OPINION AND |
| NANCY A. BERRYHILL, Acting | ORDER |
| Commissioner of Social Security, | |
| Defendant. | |

## I.

## INTRODUCTION

Plaintiff Jesse Velez filed a Complaint on June 20, 2016, seeking review of the Commissioner's denial of his application for Title II Disability Insurance Benefits ("DIB") and Title XVI Supplemental Security Income ("SSI") benefits. (*See* Dkt. No. 1.) On December 19, 2016, Defendant filed an Answer. (Dkt. No. 15.) All parties have consented to proceed, pursuant to 28 U.S.C. § 636(c), before the undersigned Magistrate Judge for all further proceedings, including entry of Judgment. (*See* Dkt. Nos. 19, 23, 24.) On April 13, 2017, the parties filed a "Joint Stipulation" (sometimes hereinafter "J. Stip.") setting forth the disputed issues. (Dkt. No. 25.) The matter is now under submission and ready for decision.

## II.

## ADMINISTRATIVE PROCEEDINGS, BACKGROUND

On January 31, 2013, Plaintiff filed applications for Title II DIB and Title XVI SSI benefits, alleging an onset of disability date of January 9, 2013. (*See* Administrative Record ["AR"] 304-14, 315-21.) Plaintiff claimed that he cannot work due to, among other things, a pulmonary embolism, "right heart failure," "diabetes type II," deep vein thrombosis, and "chronic bronchitis." (*See* AR 339.)

Plaintiff was born on November 9, 1981, and at the time he allegedly became disabled he was 31 years old. (*See* AR 40, 83, 304, 315.) Plaintiff is 5' 6" tall, and has weighed from 250 to 270 pounds, which the Administrative Law Judge ("ALJ") found qualified as obese. (*See, e.g.,* AR 30, 339, 628.) Plaintiff has a General Equivalency Degree ("GED"), and he can read, write, and communicate in English. (AR 40, 338.) Plaintiff used to work as a "tile setter" or "tile finisher." (AR 39, 83-84, 341.) He was laid off in 2011, and he collected unemployment benefits for about a year-and-a-half. (*See* AR 29, 84-87.) He lives in an apartment with his fiancé and their six children, who range in age from two to nine years old. (AR 81.) Plaintiff's fiancé works outside of their home, and they also receive approximately $800 a month in food stamps, and $900 a month in aid for the children, and Plaintiff himself is eligible for MediCal. (AR 82-83.) Plaintiff was a cigarette smoker, but he finally managed to quit smoking sometime around October 2013. (*See* AR 91-92.)

In June 2012, a car backing slowly out of a driveway struck Plaintiff, and he went to the emergency room complaining of back pain. (*See* AR 388-93.)

Around January 9, 2013, Plaintiff suffered a "pulmonary embolism" for which he was hospitalized for about a week. (AR 85-87, 492.) Tests at the hospital showed a "saddle pulmonary embolus" in the main pulmonary artery, and large "bilateral pulmonary emboli" in both lungs. (*See* AR 29, 410, 492.) Plaintiff also had acute deep vein thrombosis ("DVT") in his left popliteal vein, one of the

major blood vessels carrying blood from the lower leg to the heart. (*See* AR 29, 410-52.) Plaintiff was discharged from the hospital on January 16, 2013, and he was given prescriptions for Coumadin and Lovenox, anticoagulant blood thinners, and advised to do light work and light exercise. (*See* AR 29, 410-52, 525.) Plaintiff has not worked since January 2013. (AR 85.) Plaintiff claims that he continues to experience chronic chest pain which severely limits his activity. (*See* AR 89-95.)

Two hearings were held before the same ALJ, the first on January 24, 2014, and a supplemental hearing on May 8, 2014. (*See* AR 25, 47, 76.) Plaintiff appeared and testified at both hearings, and he was represented by a non-attorney representative at both hearings. (*See* AR 25.) A vocational expert ("VE") appeared and testified at the first hearing, and a medical expert ("ME") testified by phone at the second hearing. (*See* AR 25.)

## III.

## SUMMARY OF ADMINISTRATIVE DECISION

The ALJ issued a "partially favorable" opinion on May 23, 2014 (*see* AR 21-41), finding at step three of the five-step sequential evaluation that Plaintiff met a listed impairment, Listing 3.09, primarily due to a pulmonary embolism and deep vein thrombosis, and was disabled from January 9, 2013, through March 27, 2014, and that he was therefore eligible for both DIB and SSI benefits for that period. (AR 26-33.) However, the ALJ also employed a seven-step SSI sequential evaluation and an eight-step DIB sequential evaluation, and determined that "medical improvement" had occurred, and that Plaintiff's disability ended March 28, 2014, and Plaintiff was no longer disabled after that date. (*See* AR 33-41.)

In particular, the ALJ found that Plaintiff had not engaged in substantial gainful activity since January 9, 2013, the alleged onset of disability date. (AR 29.) The ALJ found that Plaintiff had three severe impairments: (1) a "massive pulmonary embolism"; (2) deep vein thrombosis ("DVT"); and (3) obesity. (AR 29.) The ALJ found that Plaintiff's pulmonary embolism and obesity, in

combination, equaled Listing 3.09, which concerns respiratory disorders and "chronic pulmonary hypertension," as set forth in the Listing of Impairments at 20 C.F.R. Part 404, Subpart P, Appendix 1. (*See* AR 29, 31.)

However, while the ALJ found that Plaintiff's conditions equaled Listing 3.09, the ALJ found that the record showed that "[m]edical improvement occurred as of March 28, 2014," making it "the date the claimant's disability ended." (AR 33.) The ALJ found that after March 28, 2014, Plaintiff's condition had improved and Plaintiff had the residual functional capacity ("RFC") to perform "a reduced range of sedentary work as defined in 20 C.F.R. [§§] 404.1567(a) and 416.967(a)." (AR 34.) The ALJ primarily based his opinion on a report dated March 27, 2014, from one of Plaintiff's treating physicians, Dr. Weber Chen, a hematologist, who opined that Plaintiff's "[b]ilateral pulmonary emboli and left leg DVT" had "resolved after 11 months of Coumadin."[1] (*See* AR 33-34, 617-18.)

The ALJ's opinion noted that the ME, Dr. Wallach, stated at the second hearing that Plaintiff's lung damage would have met a listing for "at least one year" after the January 2013 pulmonary embolism incident. (*See* AR 32.) The ME opined that the records showed that Plaintiff was improving, but in the ME's opinion Plaintiff was "still limited." (*See* AR 32.) The ALJ stated that "I will grant the claimant the benefit of the doubt and I will credit Dr. Wallach's testimony with respect to an approximate one-year period." (AR 32.) The ALJ also noted that Dr. Stephen Chen, whom he described as "a specialist in pulmonary and

---

[1] Plaintiff has been under the care of two treating physicians, Dr. Stephen Chen, a pulmonologist, and Dr. Weber Chen, a hematologist and oncologist, since his pulmonary embolism incident in January 2013. There appears to be some confusion between the two Dr. Chens in the parties' Joint Stipulation. For example, Defendant apparently attributes two records, one from Dr. Stephen Chen and one from Dr. Weber Chen, to Dr. Stephen Chen alone. (*See, e.g.,* J. Stip. at 14 citing AR 509 (September 4, 2013 letter from Dr. Stephen Chen) and AR 617 (March 27, 2014 report from Dr. Weber Chen). For the sake of clarity, the Court will refer to each doctor by their full name.

critical care," offered an opinion that "was materially consistent with that of the medical expert" (*i.e.,* Dr. Wallach); but the ALJ faulted Dr. Stephen Chen's comparison of Plaintiff's dyspnea (*i.e.,* difficult or labored breathing) on exertion or ambulation to a "New York Heart Association Class III" categorization, saying that Dr. Stephen Chen's comparison was "vague and does not address specific abilities and limitations." (AR 38, citing 20 C.F.R. §§ 404.1513(e) and 416.913(e).)

The ALJ also set forth a three-paragraph discussion of his concerns about the handwriting in reports and records at Exhibits 3E, 3F, 5F, 6F, 10F, 11F, and 12F. (*See* AR 39.) Those reports and records generally concerned impairment questionnaires about Plaintiff's functionality that were signed by treating physicians Dr. Stephen Chen and Dr. Tarek Nassif. (*See id.*) The impairment questionnaires generally opined that Plaintiff would likely be absent from work more than three days a month. (*See* AR 506-07, 585-86, 593-94, 634-39.) The ALJ opined that much of the handwriting in these questionnaires appeared similar to Plaintiff's, calling the opinions in those reports into question. (*See* AR 39.)[2]

_____

[2] In particular, the Court notes that Dr. Stephen Chen signed off on two "Pulmonary Impairment Questionnaires" that were considered by the ALJ, and that opined Plaintiff was likely to be absent from work more than three times a month. (*See* Ex. 6F at AR 506-07 [record dated August 31, 2013]; Ex. 12F at AR 593-94 [record dated October 10, 2013].) The record also contains a "Pulmonary Impairment Questionnaire" from Dr. Stephen Chen dated October 6, 2015 that was not before the ALJ, but that was before the Appeals Council and made part of the record. (*See* AR 1-7, 634-39.) Dr. Nassif, a treating general practitioner, also signed a "Multiple Impairment Questionnaire" on August 20, 2013, that stated that Plaintiff was likely to be absent from work more than three times a month. (*See* AR 585-86.) The ALJ noted that Exhibits 6F [AR 500-07] and 11F [AR 577-86] had handwriting that was very similar, but differed from the handwriting on Exhibits 3F [AR 456-64] and 10F [AR 567-76]. (AR 39.) The ALJ also commented that "the handwriting at Exhibit 6F and 11F appears remarkably similar to the handwriting at Exhibit 3E [AR 346-489] which is apparently the claimant's handwriting." (AR 39.) The ALJ went on to state that "[f]or the same reasons that I give little weight to the opinion at Exhibit 6F [*i.e.,* Dr. Stephen Chen's August 31, 2013 Pulmonary Impairment Questionnaire], the very similar opinion at Exhibit 12F [Dr. Stephen Chen's October 10, 2013 Pulmonary Impairment Questionnaire] merits little

The ALJ also noted Plaintiff's contention that, while medical records might indicate improvement, Plaintiff could still not perform full time work. (*See* AR 34.) However, the ALJ found that Plaintiff's complaints of further limitations were "not entirely credible," and while the ALJ acknowledged that Plaintiff "was symptomatic for a period," and that Plaintiff "remains somewhat symptomatic," the ALJ nevertheless found Plaintiff would now only be "limited to a range of sedentary work." (*See* AR 36-37.)

The ALJ went on to find that Plaintiff could not perform his past relevant work as a tile setter. (AR 39.) However, the ALJ found that, based on the testimony from the VE at the first hearing, Plaintiff was able perform three other unskilled jobs that the VE had identified: (1) "addresser," listed in the Dictionary of Occupational Titles ("DOT") as no. 209.587-010; (2) "order clerk," DOT no. 209.567-014; and (3) "call out operator," DOT no. 237.367-014. (AR 40.)

Accordingly, the ALJ found that, while Plaintiff was disabled and eligible for DIB and SSI benefits for the "closed period" from January 9, 2013, the alleged onset date, through March 27, 2014, Plaintiff's disability ended on March 28, 2014, the day after Dr. Weber Chen's March 27, 2014 report. (*See* AR 40-41.)

## IV.

## APPEALS COUNCIL DECISION

In June 2014, Plaintiff filed a request for the Appeals Council to review the decision of the ALJ. (*See* AR 1, 20.) Subsequently, four new exhibits were submitted to the Appeals Council that were not before the ALJ, that is, Exhibits 10E [AR 379-82], 18F [AR 627-31], 19F [AR 632], and 20F [AR 633-39]. (*See, e.g.,*

---

weight." (AR 39.) The ALJ also stated that "[t]he principle reason, however, why I give little weight to these reports is because they are inconsistent with the objective evidence as stated earlier. I note the handwriting issues only as [a] possible additional reason for caution in accepting the opinions at face value." (AR 39.)

AR 5, 6, 630-39.) Exhibit 10E is a "representative's brief" dated March 10, 2016 from Plaintiff's counsel which noted, *inter alia,* the submission of this "new and material evidence" to the Appeals Council. (*See* AR 379-82.) Plaintiff "ask[ed] that this case be remanded back to the ALJ for the period of March 28, 2014 onward so that he can seek clarification from Dr. Stephen Chen and/or obtain additional ME evidence to evaluate the updated record." (AR 382, citing, *inter alia,* 20 C.F.R. §§ 404.1520b, 404.1527, 416.920b, 416.927, and Social Security Ruling 96-2p.) The Appeals Council stated that it was making the newly-submitted Exhibits 10E, 18F, 19F, and 20F "part of the record." (AR 6.)

Exhibit 18F is a one-page record documenting a "venous duplex sonogram" by Dr. Roy Kwak that revealed no DVT in either of Plaintiff's legs. (*See* AR 630.) It appears that Exhibit 19F (AR 632), treatment notes from Dr. Stephen Chen from February 2014, is identical to treatment notes at Exhibit 17F at 1 (AR 625). Exhibit 20F is the "Pulmonary Impairment Questionnaire" signed by Dr. Stephen Chen on October 6, 2015. (*See* AR 634-39.) As discussed below, that questionnaire was virtually identical to the two prior questionnaires from Dr. Stephen Chen, signed on August 31, 2013 (AR 501-07) and October 10, 2013 (AR 588-94), and that new questionnaire still stated that Plaintiff would likely be absent from work more than three times a month as a result of his impairments. (AR 639.)

On April 19, 2016, the Appeals Council found that the new evidence did not provide a basis for changing the ALJ's decision, and the Appeal Council denied Plaintiff's request for review. (AR 1-4.)[3]

---

[3] In particular, the Appeal Council's opinion stated, in pertinent part:
> We found that this information does not provide a basis for changing the Administrative Law Judge's decision. [¶] We also looked at the additional evidence you submitted from Stephen Chen, M.D. dated December 17, 2014 to February 25, 2014 [sic]; Garfield Medical Center dated July 14, 2015; Peter Fung, M.D. dated November 11, 2015; and Comprehensive Cardiovascular Specialists dated November 19, 2015. The Administrative Law Judge decided

# V.

## STANDARD OF REVIEW

The primary issue in Social Security disability cases is whether the claimant is "disabled" under section 1614(a)(3)(A) of the Social Security Act. Disability is defined as the inability to engage in any substantial gainful activity by reason of any medically determinable impairment or mental impairment or combination of impairments that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than 12 months. *See* 42 U.S.C. § 423(d)(1)(A); *Molina v. Astrue,* 674 F.3d 1104, 1110 (9th Cir. 2012).

## A.    Five-Step Sequential Evaluation

When the claimant's case has proceeded to consideration by an ALJ, the ALJ conducts a five-step sequential evaluation to determine at each step if the claimant is or is not disabled. *See Molina,* 674 F.3d at 1110 (citing, *inter alia,* 20 C.F.R. §§ 404.1520(a), 416.920(a)). First, the ALJ considers whether the claimant is currently working in substantial gainful activity. *Id.* If not, the ALJ proceeds to a second step to determine whether the claimant has a "severe" medically

---

your case through May 23, 2014. This new information is about a later time. Therefore, it does not affect the decision about whether you were disabled beginning on or before May 23, 2014. [¶] If you want us to consider whether you were disabled after May 23, 2014, you need to apply again.

(AR 2; bracketed material added.)

The Appeals Council stated that it made the new evidence submitted in Exhibits 10E, 18F, 19F, and 20F part of the record. (AR 6.) However, it also stated that it did not consider "additional evidence," because it was "about a later time," identifying that evidence as records from Dr. Stephen Chen "dated December 17, 2014 to February 25, 2014" [sic]; a July 14, 2015 record from "Garfield Medical Center," a November 11, 2015 record from Dr. Peter Fung; and a November 2015 record from "Comprehensive Cardiovascular Specialists." (AR 2.) The Appeals Court did not identify that "additional evidence" with exhibit numbers, and it appears to the Court that that "additional evidence" has not been included in the record that is before this Court. Taken together, it appears that the Appeals Council made a part of the record and considered Exhibits 10E, 18F, 19F, and 20F in denying Plaintiff's appeal of the ALJ's decision and, as discussed below, this Court will consider the exhibits to the extent that they are relevant.

determinable physical or mental impairment or combination of impairments that has lasted for more than 12 months. *Id.* If so, the ALJ proceeds to a third step to determine whether the claimant's impairments render the claimant disabled because they "meet or equal" any of the "listed impairments" set forth in the Social Security regulations at 20 C.F.R. Part 404, Subpart P, Appendix 1. *See Rounds v. Comm'r Soc. Sec. Admin.,* 807 F.3d 996, 1001 (9th Cir. 2015).

If the claimant's impairments do not meet or equal a "listed impairment," before proceeding to the fourth step, the ALJ assesses the claimant's "residual functional capacity" ("RFC"), that is, what the claimant can do on a sustained basis despite the limitations from his or her impairments. *See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4); Social Security Ruling ("SSR") 96-8p. After determining the claimant's RFC, the ALJ determines at the fourth step whether the claimant has the RFC to perform her past relevant work, either as she "actually" performed it in the past, or as that same job is "generally" performed in the national economy. *See Stacy v. Colvin,* 825 F.3d 563, 569 (9th Cir. 2016) (citing, *inter alia,* SSR 82-61); *see also* 20 C.F.R. §§ 404.1560(b), 416.960(b).

If the claimant cannot perform her past relevant work, the ALJ proceeds to a fifth and final step to determine whether there is any other work, in light of the claimant's RFC, age, education, and work experience, that the claimant can perform and that exists in "significant numbers" in either the national or regional economies. *See* 20 C.F.R. §§ 404.1520(g), 416.920(g); *Tackett v. Apfel,* 180 F.3d 1094, 1100-01 (9th Cir. 1999). If the claimant can do other work, she is not disabled; but if the claimant cannot do other work and meets the duration requirement, the claimant is disabled. *See Tackett,* 180 F.3d at 1099 (citing 20 C.F.R. § 404.1560(b)(3)); *see also* 20 C.F.R. § 416.960(b)(3).

The claimant generally bears the burden at steps one through four to show that she is disabled, or that she meets the requirements to proceed to the next step; and the claimant bears the ultimate burden to show that she is disabled. *See, e.g.,*

*Molina,* 674 F.3d at 1110; *Johnson v. Shalala,* 60 F.3d 1428, 1432 (9th Cir. 1995). However, at step five, the ALJ has a "limited" burden of production to identify representative jobs that the claimant can perform and that exist in "significant" numbers in the economy. *See* 20 C.F.R. §§ 404.1560(c)(1)-(2), 416.960(c)(1)-(2); *Hill v. Astrue,* 698 F.3d 1153, 1161 (9th Cir. 2012); *Tackett,* 180 F.3d at 1100.

**B.  Seven-or Eight-Step Sequential Evaluation Re: Medical Improvement**

Where a claimant has been found disabled during a certain qualifying "closed period," but there is an issue about whether the claimant's disability continues through the date of the ALJ's decision, the ALJ conducts a further multi-step sequential evaluation. *See* 20 C.F.R. §§ 404.1594 and 416.994; *see also Attmore v. Colvin,* 827 F.3d 872, 875 (9th Cir. 2016). For a Title II DIB claim, the evaluation essentially consists of eight steps; and for an SSI benefits claim, the evaluation essentially consists of seven steps. *Cf.* 28 C.F.R. §§ 404.1594(f)(1)-(8), 416.994(f)(1)-(7); *see also Attmore,* 827 F.3d at 875; AR 27-28. The distinguishing step between the eight-step DIB evaluation and the seven-step SSI evaluation is at step one of a DIB claim's evaluation, which requires a determination about whether the claimant is presently engaging in substantial gainful activity, a step which is generally not a relevant factor used to determine if the claimant's disability continues for purposes of an SSI claim. *Cf.* 28 C.F.R. §§ 404.1594(f)(1), 416.994(f)(1); *see also* AR 28.

In analyzing whether a claimant's disability is continuing, the Social Security Administration has stated as follows:

> We must determine if there has been any medical improvement in your
> impairment(s) and, if so, whether this medical improvement is related
> to your ability to work. If your impairment(s) has not medically
> improved we must consider whether one or more of the exceptions to
> medical improvement applies. If medical improvement related to your
> ability to work has not occurred and no exception applies, your benefits

will continue. Even where medical improvement related to your ability to work has occurred or an exception applies, in most cases . . . we must also show that you are currently able to engage in substantial gainful activity before we can find that you are no longer disabled.

20 C.F.R. § 404.1594(a); *see also* 20 C.F.R. § 416.994(b)

The ALJ must determine whether "medical improvement" in the claimant's condition has occurred at step three of the eight-step evaluation for a DIB claim and step two of the seven-step evaluation for an SSI claim. *See* 20 C.F.R. §§ 404.1594(f)(3) and 416.994(b)(5)(ii); *see also* AR 28. "Medical improvement" is any decrease in severity of the impairment(s) in symptoms, signs, or laboratory findings. *See* 20 C.F.R. §§ 404.1594(b)(1) and 416.994(b)(1)(i); *see also Attmore,* 827 F.3d at 875. "Medical improvement" requires a comparison of prior and current medical evidence which must show that there has been improvement in the symptoms, signs or laboratory findings associated with an impairment(s); and the ALJ must compare the medical severity of the impairment(s) that was present at the time the claimant was last found disabled to the time of the comparison. *See Attmore,* 827 F.3d at 875-76. The Ninth Circuit has noted that "Congress enacted the medical improvement standard as a safeguard against the arbitrary termination of benefits." *Attmore,* 827 F.3d at 876 (citation omitted).

If "medical improvement" related to the claimant's ability to do work has occurred (or if certain exceptions apply that obviate the need for a showing of medical improvement (*see* 20 C.F.R. §§ 404.1595(d) and (e), 416.994(b)((3) and (4)), the ALJ must determine whether all of the claimant's current impairments in combination are severe. *See* 20 C.F.R. §§ 404.1594(f)(6) and 416.994(b)(5)(v). If the claimant's impairments are severe, the ALJ proceeds to consider whether, based on the claimant's current RFC, the claimant can do her past relevant work or any other work, given the claimant's RFC and age, education, and past work experience. *See* 20 C.F.R. §§ 404.1594(f)(7), (8) and 416.994(b)(5)(vi), (vii). "A

11

decrease in the severity of an impairment as measured by changes (improvement) in symptoms, signs or laboratory findings can, if great enough, result in an increase in the functional capacity to do work activities." 20 C.F.R. § 404.1594(b)(4)(i); *see also* 20 C.F.R. §§ 416.994(b)(v)-(vii).

A "closed period case" is where an ALJ simultaneously found, within the same decision, that the claimant was disabled for a "closed" period of time, but also found that the claimant had "medically improved" since the end of that "closed period." *See Attmore,* 827 F.3d at 876 (citation omitted). However, once a claimant has been found to be disabled, a presumption of continuing disability arises in the claimant's favor. *See Parra v. Astrue,* 481 F.3d 742, 748 (9th Cir. 2007); *Murray v. Heckler,* 722 F.2d 499, 500 (9th Cir. 1993). The Commissioner bears the burden of establishing that a claimant has experienced medical improvement that would allow him to engage in substantial gainful activity. *See Lape v. Comm'r Soc. Sec. Admin.,* No. 3:16-CV-00712-MA, 2017 WL 1430613, at *4 (D. Or. Apr. 20, 2017) (applying presumption of continuing disability in "closed period" case) (citing *Murray,* 722 F.2d at 500).

## C. Review of the Commissioner's Decision

Under 42 U.S.C. § 405(g), this Court reviews the Commissioner's decision denying benefits to determine whether it is free from legal error and supported by substantial evidence in the record as a whole. *Orn v. Astrue,* 495 F.3d 625, 630 (9th Cir. 2007). "Substantial evidence" is "more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Gutierrez v. Comm'r of Soc. Sec.,* 740 F.3d 519, 522-23 (9th Cir. 2014) (citations and internal punctuation omitted).

"The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities." *Andrews v. Shalala,* 53 F.3d 1035, 1039 (9th Cir. 1995). Although this Court cannot substitute its discretion for the Commissioner's, the Court nonetheless must review the record as a whole,

12

"weighing both the evidence that supports and the evidence that detracts from the [Commissioner's] conclusion." *Lingenfelter v. Astrue,* 504 F.3d 1028, 1035 (9th Cir. 2007) (internal quotation marks and citation omitted). "Even when the evidence is susceptible to more than one rational interpretation, we must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record." *Molina,* 674 F.3d at 1110. *See also Burch v. Barnhart,* 400 F.3d 676, 679 (9th Cir. 2005) (court will uphold Commissioner's decision when evidence is susceptible to more than one rational interpretation). Overall, the standard of review of an ALJ's decision is "highly deferential." *Rounds,* 807 F.3d at 1002 (citing *Valentine v. Comm'r Soc. Sec. Admin.,* 574 F.3d 685, 690 (9th Cir. 2009)). However, the Court may only review the reasons provided by the ALJ in the disability determination, and may not affirm the ALJ on a ground upon which the ALJ did not rely. *Garrison v. Colvin,* 759 F.3d 995, 1010 (9th Cir. 2014) (citation omitted); *see also Orn,* 495 F.3d at 630 (citation omitted). Likewise, a reviewing court may not affirm an ALJ's opinion simply by isolating a specific quantum of supporting evidence, but must consider the record as a whole, weighing both supporting and detracting evidence. *Attmore v. Colvin,* 827 F.3d 872, 875 (9th Cir. 2016) (citing *Tackett v. Apfel,* 180 F.3d 1094, 1098 (9th Cir. 1999)).

Lastly, even if an ALJ has erred, a reviewing court will still uphold the ALJ's decision if the error was harmless, that is, if it was inconsequential to the ultimate nondisability determination, or where, despite the error, the Commissioner's path "may reasonably be discerned," even if the Commissioner has explained its decision "with less than ideal clarity." *Brown-Hunter v. Colvin,* 806 F.3d 487, 492 (9th Cir. 2015) (citations and internal punctuation omitted).

**D.    Consideration of New Evidence Submitted to Appeals Council**

The Social Security regulations provide that the Appeals Council may review a case for a number of reasons, including if "the Appeals Council receives additional evidence that is new, material, and relates to the period on or before the

date of the hearing decision, and there is a reasonable probability that the additional evidence would change the outcome of the decision." 20 C.F.R. § 404.970(a)(5); *see also* 20 C.F.R. § 416.1470(a)(5); *Brewes v. Comm'r of Soc. Sec. Admin.,* 682 F.3d 1157, 1162 (9th Cir. 2012) (citing 20 C.F.R. § 404.970).

As noted, the ALJ found that Plaintiff was not disabled from March 28, 2014, though the date of the ALJ's decision on May 23, 2014. (*See* AR 40-41.) Plaintiff submitted new evidence to the Appeals Council after the ALJ's decision, including Exhibits 10E, 18F, 18F, and 20F, and the Appeals Council stated that it made those exhibits "part of the record." (*See* AR 6 and footnote 3, *supra*.)

In *Brewes,* the Ninth Circuit held "that when a claimant submits evidence for the first time to the Appeals Council, which considers that evidence in denying review of the ALJ's decision, the new evidence is part of the administrative record, which the district court must consider in determining whether the Commissioner's decision is supported by substantial evidence." *Brewes,* 682 F.3d at 1159-60. A claimant need not show "good cause" before submitting new evidence to the Appeals Council. *Id.* at 1162 (citations omitted). The Ninth Circuit also held that a plaintiff is not required to demonstrate that the later-admitted records meet the materiality standard of 42 U.S.C. § 405(g), since that standard applies only to new evidence that is *not* part of the administrative record and is presented in the first instance to the district court. *Brewes,* 682 F.3d at 1164 (implying that evidence accepted and considered by the Appeals Council and made part of the record is an apparent conclusion that the new evidence is material). Instead, "evidence submitted to and considered by the Appeals Council is not new but rather part of the administrative record properly before the district court." *Id.*; *see also Borelli v. Comm'r of Soc. Sec.,* 570 F. App'x 651, 652 (9th Cir. Apr. 17, 2014) (unpublished) (claimants need not show good cause before submitting new evidence to the Appeals Council; and new evidence is material if it bears directly and substantially on the matter in dispute (citing, *inter alia, Brewes*).

## VI.

## DISCUSSION

**A.    Disputed Issues**

The Joint Stipulation of the parties presents two disputed issues:

(1)    Whether the ALJ, in finding that Plaintiff had shown "medical improvement" after March 27, 2014, erred in rejecting the opinions from one of Plaintiff's treating physicians, pulmonologist Dr. Stephen Chen, about Plaintiff's impairments and RFC; and

(2)    Whether the ALJ erred in his credibility findings regarding Plaintiff's complaints of continued disabling symptoms after March 27, 2014. (J. Stip. at 6.)

**A.    Disputed Issues 1 & 2: RFC After Medical Improvement, Credibility**

Because the two disputed issues raised here are essentially intertwined, and depend to a large extent on analysis of doctors' opinions which are themselves based on the record of Plaintiff's subjective complaints and Plaintiff's credibility, the Court considers both disputed issues together here.

**1.    Plaintiff's Arguments Re: Medical Improvement, RFC, Credibility**

The Court construes the gravamen of the first disputed issue to be Plaintiff's argument that the ALJ improperly credited the opinion of Dr. Weber Chen, Plaintiff's treating hematologist and oncologist, over opinions of Dr. Stephen Chen, Plaintiff's treating pulmonologist. (*See* J. Stip. at 6-18.) Plaintiff contends that the ALJ's characterizations of the records from Dr. Stephen Chen are "materially inaccurate," and he argues that "[t]he Ninth Circuit does not take a lenient view of ALJs' [sic] misrepresentation of the record." (J. Stip. at 10-11, citing, *inter alia, Tackett v. Apfel,* 180 F.3d 1094, 1101 (9th Cir. 1999).)

Plaintiff notes that Dr. Stephen Chen opined on September 4, 2013 that, among other things, Plaintiff's "conditions are thought to have originated from the events in January of 2013 and are expected to persist for at least 2-3 years, if not permanent [sic], depending on the follow-up cardiac assessments in the near

future." (J. Stip. at 8, citing AR 509.) Plaintiff notes that a "Pulmonary Impairment Questionnaire" dated October 10, 2013 and signed by Dr. Stephen Chen states that Plaintiff "is likely to be absent from work as a result of the impairments or treatment" for "more than three times a month." (*See* AR 593-94.) Plaintiff notes that records from Dr. Stephen Chen from January and February of 2014 indicate that Plaintiff "was still having shortness of breath and dyspnea on exertion with hoarseness." (J. Stip. at 9, citing AR 625; *see also* J. Stip. at 19.)

Plaintiff also notes, somewhat indirectly, that the testimony of the ME at the second, supplemental hearing on May 8, 2014, Dr. Stephen J. Wallach, endorses the functional limitations found by Dr. Stephen Chen. (*See* J. Stip. at 9-10.) Plaintiff argues that, to a somewhat "less specific degree" than Dr. Stephen Chen, Dr. Wallach believed that Plaintiff's symptoms persisted beyond March 27, 2014 and continued to render Plaintiff disabled. (*See* J. Stip. at 10, citing AR 69-70 and 509; J. Stip. at 13, citing AR 58, 69-70.)

Plaintiff also takes issue with the ALJ's criticism of Dr. Stephen Chen's reference to the "New York Heart Association Class III" descriptors as "vague." (*See* J. Stip. at 11-12, citing AR 38.) Plaintiff also argues that the ALJ's reference to a recommendation from the hospital that discharged Plaintiff after his January 2013 pulmonary incident to engage in "light home exercise" is not comparable or transferable to the demands of a work setting. (*See* J. Stip. at 12, citing AR 38.) Plaintiff also contests the ALJ's "concern" about whether some records from Dr. Chen are in Plaintiff's own handwriting. (*See* J. Stip. at 12-13, citing AR 39.)

Plaintiff argues in support of the second disputed issue that the ALJ's reasons for discounting the credibility of Plaintiff's complaints of ongoing and disabling shortness of breath, chest pain, and "fatigability" [sic] are not sufficiently "clear and convincing" to withstand review. (*See* J. Stip. at 19-23.)

In particular, Plaintiff argues that the ALJ's reliance on opinions from Dr. Rocely Ella-Tamayo, who performed an internal medicine evaluation on Plaintiff

around May 2013, and Dr. Tarek Nassif, Plaintiff's primary care physician, is misplaced because those opinions are "not illustrative of the larger pattern of respiratory symptoms that [Plaintiff] reported in every visit to his treating pulmonologist, Dr. Stephen Chen, through his most recent visit of February of 2014." (*See* J. Stip. at 19.) Plaintiff also complains that the ALJ has relied on his own interpretations of Dr. Stephen Chen's records to discredit Plaintiff's credibility, asserting such determinations require medical expertise that is beyond the ALJ's purview. (*See* J. Stip. at 20, citing, *inter alia, Day v. Weinberger,* 522 F.2d 1154, 1156 (9th Cir. 1975).) Plaintiff also argues, as he did in support of disputed issue no. 1, that the opinion from Dr. Wallach, the ME, supports Plaintiff's claims of ongoing symptoms. (*See* J. Stip. at 20-21.) Plaintiff notes that at the supplemental hearing Dr. Wallach disputed the opinions from Dr. Weber Chen on the ground that Dr. Weber Chen was a hematologist. (*See* J. Stip. at 22, citing AR 64.) Lastly, Plaintiff argues that the inconsistencies that the ALJ purportedly found between treatment notes and Plaintiff's testimony are not legitimate. (*See* J. Stip. at 22-23.) Plaintiff argues the records do not show that Plaintiff can regularly climb stairs, or that he does not feel shortness of breath, or that he can lift any significant weight on a regular, daily basis. (*See id.*)

### 2. Further Background

The following represents a chronology of significant facts:

Plaintiff went to the emergency room at Alhambra Hospital on January 9, 2013 after suffering a pulmonary embolism and he was in the hospital until January 16, 2013. (*See, e.g.,* AR 87, 118, 410, 489-92, 510-54.) Hospital records reflect that Plaintiff was treated at the hospital by Dr. Wu Liu. and apparently began seeing Dr. Stephen Chen at that time or shortly thereafter. (*See* AR 410-17, 475-77, 489-554.) Plaintiff testified that he has been seeing both Dr. Stephen Chen and Dr. Weber Chen every two or three months since his hospitalization. (*See* AR 72-73.)

On May 28, 2013, Dr. Rocely Ella-Tamayo performed an internal medicine evaluation on Plaintiff at the Commissioner's request. (*See* Ex. 4F [AR 465-72].) Dr. Ella-Tamayo noted generally normal heart and lung signs. (*See* AR 468.) Dr. Ella-Tamayo noted a "diagnostic impression" of obesity, diabetes mellitus, hypertension, a history of pulmonary embolism that was being treated with Warfarin, and "past chronic nicotine abuse." (AR 469.) Dr. Ella-Tamayo set forth a "functional assessment" that stated, *inter alia,* that Plaintiff could lift 20 pounds occasionally and 10 pounds frequently, "[s]itting is unrestricted," and stand and/or walk for 6 hours out of an 8-hour workday. (AR 469.)

On August 30, 2013, a "family practice" treating physician, Dr. Tarek Nassif, signed a "Multiple Impairment Questionnaire." (*See* Ex. 11 F [AR 578-86].) The questionnaire stated that Dr. Nassif began treating Plaintiff in 2006 or 2007 and had most recently examined Plaintiff on January 7, 2013. (*See* AR 578.) The questionnaire said that Dr. Nassif diagnosed Plaintiff's conditions as "diabetes, high blood pressure, COPD [*i.e.,* chronic obstructive pulmonary disease], lower back pain." (AR 579.) The questionnaire reflected that Plaintiff could only sit for 2 hours, and stand or walk for 2 hours in an eight-hour day; could occasionally lift up to 5 pounds; was incapable of tolerating even "low work stress" due to high blood pressure and low back pain, and was likely to be absent from work more than three times a month. (*See* AR 581-85.)

On August 31, 2013, about seven months after Plaintiff's January 2013 pulmonary embolism incident, Dr. Stephen Chen signed a "Pulmonary Impairment Questionnaire" regarding Plaintiff. (*See* AR 501-07.) Among other things, the questionnaire stated that Plaintiff had "chronic" pulmonary-related issues (AR 503), could only sit/stand for one hour each day (AR 504), and would likely be absent from work more than three times a month. (AR 506.)

In a narrative letter dated September 4, 2013 prepared "to support [Plaintiff's] application for Social Security Benefit[s]," and addressed to "To

Whom It May Concern" Dr. Stephen Chen stated, *inter alia,* that "[i]t is probably a miracle that anyone with such degree of pulmonary artery occlusion survived without sudden cardiac death." (AR 509.) Dr. Stephen Chen also opined that obesity and "COPD" [chronic obstructive pulmonary disease] "mak[e] his dyspnea even more [sic] than those patients with pulmonary embolism alone." (AR 509.) Dr. Stephen Chen went on to opine that "[t]hese conditions are thought to have originated from the events in January of 2013 and are expected to persist for at least 2-3 years, if not permanent, depending on the follow-up cardiac assessments in the near future." (AR 509.)

Dr. Stephen Chen signed another "Pulmonary Impairment Questionnaire" on October 10 2013. (*See* AR 588-94.) As with the first questionnaire in August 2013, Dr. Stephen Chen again opined that Plaintiff would be absent from work more than three times a month. (AR 593.)

On October 21, 2013, Plaintiff saw Dr. Nassif, and the ALJ states that a progress note reflects that Plaintiff complained of shortness of breath. (AR 37, citing Ex. 14F at 2 [AR 608].)

An echocardiograph report dated January 30, 2014 from Dr. Tom Thao Yeh at Alhambra Hospital concluded, *inter alia,* that Plaintiff had a normal-size left ventricle, an ejection fraction of 55%, and "right ventricle systolic pressure of 33 mmhg." (AR 611.)

On March 27, 2014, Dr. Weber Chen, Plaintiff's treating hematologist and oncologist, prepared a report after Plaintiff was apparently referred to him by Dr. Stephen Chen. (*See* AR 617-18.) Dr. Weber Chen reported that a CT scan of Plaintiff's chest on August 3, 2013 "failed to reveal chronic pulmonary amboli." (AR 617.) Upon physical examination, Dr. Weber Chen found that Plaintiff's lungs were clear and his heart was normal. (AR 617.) Dr. Weber Chen assessed "[b]ilateral pulmonary emboli and left leg DVT – idiopathic – resolved after 11 months of Coumadin. Hypercoagulable work-up negative." (AR 617.) Dr. Weber

Chen's treatment plan stated, *inter alia,* that Plaintiff should "[c]ontinue to be off anti-coagulation since no evidence of hyper coagulable state and no radiographic evidence of PE and DVT. At this point, clinical monitor only." (AR 618.)

At the second supplemental hearing before the ALJ on May 8, 2014, the ME Dr. Wallach initially testified that he thought that Plaintiff still suffered from the effects of his pulmonary embolism and still met the requirement for a listed impairment at Listing 3.09 (*see* AR 58-60); nonetheless, the ME opined that, while Plaintiff "absolutely" met Listing 3.09 "for a year," Plaintiff "doesn't have any significant pulmonary hypertension now, and you need that to meet [Listing] 3.09." (AR 70.) The ME noted that there is a difference of opinion among medical experts about whether patients such as Plaintiff should remain on Coumadin for life. (*See* AR 59.) The ME noted an opinion from Dr. Stephen Chen in "fall of last year" [*i.e.,* fall of 2013] which "said he's still limited." (AR 69.) In response to a question about Plaintiff's RFC, the ME opined that "you can [] put him [Plaintiff] on a treadmill and see what he can do." (AR 66.)

Plaintiff testified at the second hearing that he doesn't think he can do a sit-down job because, among other things, he gets short of breath even when he sits. (*See* AR 74, 100.) Plaintiff testified that he often gets chest pain, and when he does he has to stop what he is doing until the pain goes away. (AR 100-01.)

The ALJ issued his opinion on May 23, 2014. (AR 25-41.) However, as noted, the Administrative Record contains a number of records that were submitted after the ALJ's May 23, 2014 decision and pertain to examinations or assessments that were made after May 23, 2014.

On July 23, 2014, Dr. Weber Chen prepared another report, again based on the referral of Dr. Stephen Chen, that noted "[n]o recent SOB [shortness of breath] or hemoptysis [coughing up blood]." (AR 628; bracketed material added.) The report stated that "[a] repeat V/Q scan [*i.e.* a ventilation-perfusion scan to examine lung air flow and blood flow] on 1/22/2014 showed low probability for PE and

venuos doppler of legs on 2/25/2014 was negative for DVT. Hypercoagulable study was essentially unremarkable." (AR 628.) The report went on to note "[b]ilateral pulmonary emboli and left leg DVT – idiopathic – resolved after 11 months of Coumadin. Hypercoagulable work-up negative." (AR 628.) The report stated that the plan was for Plaintiff to return to the clinic in six months, and after that return as necessary. (*See* AR 629.)

On November 13, 2014, Dr. Roy Kwak reported on a "venuous duplex" sonogram examination, and stated that his impression was "[n]o evidence for deep venous thrombosis in either leg," and noted "[n]o significant change since the prior study." (AR 630.)

The last record in the Administrative Record is Exhibit 20F, which is dated October 6, 2015, and is another "Pulmonary Impairment Questionnaire" from Dr. Stephen Chen. (*See* AR 634-39.) Its findings appear virtually identical to the findings in the questionnaires signed by Dr. Stephen Chen on August 31, 2013 and October 10, 2013. (*Cf.* AR 501-07, 588-94.) Among other things, the October 6, 2015 questionnaire noted Plaintiff's condition as "chronic obstructive pulmonary disease" (AR 634); noted "clinical signs or symptoms" of "dyspnea/near syncope" (*i.e.,* loss of consciousness caused by a fall in blood pressure) (AR 635); said that Plaintiff could still only sit/stand for one hour each day (AR 636) and would experience pain, fatigue, or other symptoms that would interfere with attention and concentration "frequently," from "1/3 – 2/3 of an 8-hour workday" (AR 638); and would be absent from work more than three times a month. (AR 639.)

### 3. Applicable Law

#### a. Evaluation of Physician's Opinions, Other Opinion Evidence

In evaluating physicians' opinions, the case law and regulations distinguish among three types: (1) those who treat the claimant (*i.e.,* treating physicians); (2) those who see the claimant in person and perform a consultative examination but do not treat the claimant (examining or consultative physicians); and (3) those

who neither treat nor examine the claimant, usually only reviewing records (non-examining physicians). *Lester v. Chater,* 81 F.3d 821, 830 (9th Cir. 1995); *see also* 20 C.F.R. §§ 416.902, 416.927(d). As a general rule, more weight should be given to the opinion of a treating source than to the opinions of doctors who do not treat the claimant. *Winans v. Bowen,* 853 F.2d 643, 647 (9th Cir. 1987); *see also* 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2).

However, treating physician's opinion is not necessarily conclusive as to either a physical condition or the ultimate issue of disability. *See Magallanes v. Bowen,* 881 F.2d 747, 751 (9th Cir. 1989). The ALJ may disregard the treating physician's opinion whether or not that opinion is contradicted. *Id.* For example, the ALJ need not accept a treating physician's opinion which is "brief and conclusionary in form with little in the way of clinical findings to support [its] conclusion." *Id.* (citing *Young v. Heckler,* 803 F.2d 963, 968 (9th Cir.1986)). Furthermore, where a treating physician's opinion about disability is premised to a significant extent upon the claimant's own accounts of his symptoms and limitations, the treating physician's opinion may be discounted where the claimant's complaints have been properly discounted. *See Batson v. Comm'r of Soc. Sec. Admin.,* 359 F.3d 1190, 1195 (9th Cir. 2004) (where treating physician's views were in form of checklist, did not have evidentiary support, were contradicted by other statements and assessments, and were based on claimant's own subjective descriptions of pain, ALJ may properly give minimal weight to treating physician's opinion); *Fair v. Bowen,* 885 F.2d 597, 605 (9th Cir. 1989) (treating physician's opinion may be disregarded where it was premised on claimant's own subjective complaints which the ALJ had already properly discounted).

However, if a treating physician's opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record, [it will be given] controlling weight." 20 C.F.R. § 404.1527(d)(2); *see also* 20 C.F.R. § 416.927(d)(2)

(same); *Orn,* 495 F.3d at 631 (discussing 20 C.F.R. § 404.1527(d)(2)). If a treating physician's opinion is not given "controlling weight" because it is not "well-supported" or because it is inconsistent with other substantial evidence in the record, the Commission considers other specified factors, including the "[l]ength of the treatment relationship and the frequency of examination" by the treating physician and the "nature and extent of the treatment relationship" between the patient and the treating physician to determine what weight to give the opinion. *See* 20 C.F.R. §§ 416.927(d)(2)(i)-(ii), (d)(4); *Orn,* 495 F.3d at 631. Under those factors, even if a treating physician's opinion does not meet the test for controlling weight, it may still be entitled to the "greatest weight" and should be adopted. *See* Social Security Ruling ("SSR") 96-2p, 1996 WL 374188 (S.S.A.) at *4.

The Ninth Circuit has held that an ALJ may reject a treating physician's un-contradicted opinion on a medical impairment or the ultimate issue of disability only with "clear and convincing" reasons supported by substantial evidence in the record. *See Reddick v. Chater,* 157 F.3d 715, 725 (9th Cir. 1998) (quoting *Matthews v. Shalala,* 10 F.3d 678, 680 (9th Cir. 1993)); *see also Magallanes,* 881 F.2d at 751. If the treating physician's opinion on the issue of disability is contradicted, the ALJ must still provide "specific and legitimate" reasons supported by substantial evidence in the record in order to reject the treating physician's opinion. *Lester,* 81 F.3d at 830; *Holohan v. Massanari,* 246 F.3d 1195, 1202-03 (9th Cir. 2001). "The ALJ could meet this burden by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings."" *Magallenes v. Bowen,* 881 F.2d 747, 751 (9th Cir. 1989) (internal quotation marks omitted).

"Where the opinion of the claimant's treating physician is contradicted, and the opinion of a nontreating source is based on independent clinical findings that differ from those of the treating physician, the opinion of the nontreating source may itself be substantial evidence," and in that case "it is . . . solely the province of

the ALJ to resolve the conflict." *Magallanes,* 881 F.2d at 751. Where, on the other hand, a nontreating source's opinion contradicts that of the treating physician but is not based on independent clinical findings, or rests on clinical findings also considered by the treating physician, the opinion of the treating physician may be rejected only if the ALJ gives specific, legitimate reasons for doing so that are based on substantial evidence in the record. *Id.* at 751, 755. *See also Ramirez v. Shalala,* 8 F.3d 1449, 1453 (9th Cir. 1993) (applying test where ALJ relied on contradictory opinion of non-examining medical advisor).

An opinion from a non-examining physician, such as a medical expert, cannot by itself constitute substantial evidence. *See Lester v. Chater,* 81 F.3d 821, 831 (9th Cir. 1995); *Andrews v. Shalala,* 53 F.3d 1035, 1042 (9th Cir. 1995). However, this does not mean that the opinions of non-examining sources and medical advisors are entitled to "little" or no weight. *Id.* at 1041. However, reports of a non-examining advisor "need not be discounted and may serve as substantial evidence when they are supported by other evidence in the record and are consistent with it." *Andrews,* 53 F.3d at 1042. *See also Thomas v. Barnhart,* 278 F.3d 947, 957 (9th Cir. 2002) ("The opinions of non-treating or non-examining physicians may also serve as substantial evidence when the opinions are consistent with independent clinical findings or other evidence in the record.).

   b.   Credibility Determinations

To determine whether a claimant's testimony regarding subjective pain or symptoms is credible, an ALJ must engage in a two-step analysis. *Lingenfelter,* 504 F.3d at 1035-36. First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged. *Lingenfelter,* 504 F.3d at 1036. Second, if the claimant meets this first test, and there is no evidence of malingering, "the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons

for doing so." *Lingenfelter,* 504 F.3d at 1036 (citing *Smolen v. Chater,* 80 F.3d 1273, 1281 (9th Cir. 1996)).

When analyzing subjective symptoms of pain, the ALJ may consider factors relevant to the symptoms such as, *inter alia,* the claimant's daily activities; precipitating and aggravating factors; the type, dosage, effectiveness and side effects of medication; treatment, other than medication, that the claimant receives or has received for relief of pain or other symptoms; or any other measures that the claimant has used to relieve pain or symptoms. *See* 20 C.F.R. § 404.1529. The ALJ may employ "ordinary techniques of credibility evaluation," such as prior inconsistent statements concerning symptoms, testimony that appears less than candid, or unexplained or inadequately explained failure to seek treatment or follow a prescribed course of treatment, in assessing a claimant's credibility. *See Tommasetti v. Astrue,* 533 F.3d 1035, 1039 (9th Cir. 2008) (citations omitted).

However, once a claimant has presented medical evidence of an underlying impairment, the ALJ may not discredit the claimant's testimony regarding subjective pain and other symptoms merely because the symptoms, as opposed to the impairments, are unsupported by objective medical evidence. *Lingenfelter,* 504 F.3d at 1035-36; *Reddick v. Chater,* 157 F.3d 715, 722 (9th Cir. 1998). "'[T]he ALJ can reject the claimant's testimony about the severity of [her] symptoms only by offering specific, clear and convincing reasons for doing so.'" *Lingenfelter,* 504 F.3d at 1036 (quoting *Smolen,* 80 F.3d at 1281).

### c. Determination of Residual Functional Capacity

An assessment of a claimant's RFC is an assessment of the individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis, that is, for 8 hours a day 5 days a week, or an "equivalent" work schedule. *See* Social Security Ruling 96-8p. An ALJ is responsible for determining a claimant's RFC, that is, for making a determination about the most a claimant can still do despite her limitations, including medically-

25

determinable impairments that are not severe and any related symptoms such as pain. *See* 20 C.F.R. §§ 404.1545, 416.945. *See also Reddick v. Chater,* 157 F.3d 715, 724 (9th Cir. 1998) ("Social Security regulations define residual functional capacity as the 'maximum degree to which the individual retains the capacity for sustained performance of the physical-mental requirements of jobs.'") (quoting 20 C.F.R. 404, Subpt. P, App. 2 § 200.00(c)). An ALJ will assess a claimant's RFC based on all of the relevant medical and other evidence in the record, and will consider descriptions and observations of the claimant's limitations from her impairments, including limitations resulting from symptoms such as pain, from medical sources, from the claimant herself, or from family, neighbors, friends, or other persons. *See* 20 C.F.R. §§ 404.1545, 416.945. An RFC determination by an ALJ is not a "medical opinion," but rather an "administrative finding" that is reserved to the Commissioner. *See* 20 C.F.R. §§ 404.1527(d)(1), (2); 416.927(d)(1), (2). *See also Dominguez v. Colvin,* 808 F.3d 403, 409 (9th Cir. 2015), as amended (Feb. 5, 2016) (final responsibility for deciding RFC is up to the ALJ, not reviewing court) (citing 20 C.F.R. § 416.927).

**4.    Analysis**

As set forth above, the salient issues here are: (1) whether Plaintiff's condition has "medically improved" since March 27, 2014, the date that the ALJ found that Plaintiff last met Listing 3.09 and was disabled; and, (2) if so: (i) whether the medical improvement is related to Plaintiff's ability to do work; and (ii) whether Plaintiff has the RFC to perform other jobs. *See* 20 C.F.R. §§ 404.1594(a)-(b), 416.994(b).

a.    <u>Medical Improvement Finding</u>

The ALJ's finding of medical improvement, at least as to pulmonary embolism and deep vein thrombosis, is arguably well-supported. The ALJ's opinion notes that records showed that, after Plaintiff's January 2013 embolism incident, subsequent testing from August 2013 through February 2014 showed an

absence of pulmonary embolism, improved pulmonary arterial pressure of 33, a normal ejection fraction of 55%, and no evidence of DVT in either leg. (*See* AR 33-34 citing, *inter alia*, AR 474, 477, 480, 622, 624.) The ALJ went on to state, however, that "[i]nstead of relying on any one of these tests to establish the date the claimant medically improved, I base my decision regarding the cessation date on the date of Dr. Weber Chen's report," that is, March 27, 2014. (*See* AR 34 (referring to AR 617-18).) As noted above, Dr. Weber Chen's March 27, 2014 report stated that Plaintiff's pulmonary emboli and DVT had resolved after 11 months of Coumadin treatment, and a hypercoagulable work-up was negative, and therefore Plaintiff could be taken off anti-coagulants and would require only further clinical monitoring. (*See* AR 617-18.)

While Plaintiff references the ALJ's finding that there has been "medical improvement," Plaintiff does not set forth any specific argument as to why the ALJ's finding that Plaintiff's condition has medically improved is not supported by substantial evidence. (*See* J. Stip. at 6-13.) Plaintiff also does not apparently directly address why the March 27, 2014 and July 23, 2014 reports from Dr. Weber Chen do not show "medical improvement," particularly as to the pulmonary embolism and DVT. (*See id.*) Rather, as discussed below, Plaintiff focuses on subsequent steps in the medical improvement sequential evaluation – what the ALJ identified as steps seven eight for a DIB claim and steps six and seven for an SSI claim (*see* AR 29) -- to essentially argue that Plaintiff currently does not have the RFC to perform other work. (*See id.*)

To the extent that any of the new evidence that was before the Appeals Council but was not before the ALJ is relevant to the medical improvement issue, the absence appears to be harmless. Exhibit 18F is the July 23, 2014 office visit report from Dr. Weber Chen, and that report essentially re-states the findings that Dr. Weber Chen stated in his March 27, 2014 report. (*Cf.* Ex. 16F at 1-2 [AR 617-18] with Ex. 18F at 2-3 [AR 628-29].) Likewise, the latest Pulmonary Impairment

Questionnaire from Dr. Stephen Chen dated October 6, 2015 that was submitted to the Appeals Council is virtually identical to the two earlier questionnaires from Dr. Stephen Chen that were before the ALJ. (*Cf.* Ex. 6F at 2-8 dated August 31, 2013 [AR 501-07], Ex. 12F at 2-8, dated October 10, 2013 [AR 588-94] with Ex. 20F at 2-7, dated October 6, 2015 [AR 634-39].) In sum, the pre-ALJ's decision and post-decision reports from Dr. Weber Chen both contain medical signs that establish medical improvement, and the pre-decision and post-decision questionnaires signed by Dr. Stephen Chen do not contradict Dr. Weber Chen's specific examination findings. (*See* AR 33-34.)

### b. Residual Functional Capacity After Medical Improvement

In the Court's view, the issue comes down to whether the ALJ's assessment of Plaintiff's post-"medical improvement" RFC – that is, the ALJ's finding that the Plaintiff can still perform a reduced range of sedentary work after March 28, 2014 – is supported by substantial evidence. In that regard, the Court notes that this case is somewhat anomalous, because the ALJ found that Plaintiff was disabled at step 3, because he met Listing 3.09, and consequently the ALJ did not need to assess Plaintiff's RFC prior to finding Plaintiff disabled. (*See* five-step sequential evaluation, *supra,* and *Molina,* 674 F.3d at 1110 (citing 20 C.F.R. §§ 404.1520(a), 416.920(a)). The Ninth Circuit has stated that "in closed period cases an ALJ should compare the medical evidence used to determine that the claimant was disabled with the medical evidence existing at the time of asserted medical improvement." *Attmore,* 827 F.3d at 874. Here, however, the ALJ's opinion only undertook an RFC evaluation *after* the ALJ found that Plaintiff's condition had medically improved and that Plaintiff no longer met Listing 3.09. (*See* AR 34.)

Consequently, the issue is whether the ALJ's RFC determination is supported by substantial evidence. The ALJ's post-March 28, 2014 RFC finding stated, in its entirety, as follows:

After careful consideration of the entire record, I find that, beginning March 28, 2014, the claimant has had the residual functional capacity to lift and/or carry 10 pounds occasionally and 5 pounds frequently, stand and/or walk for two out of eight hours with normal breaks, and sit for six hours in an eight-hour workday with normal breaks. He can never climb ladders, ropes or scaffolds, but he can occasionally climb ramps and stairs. Mr. Velez can also occasionally stoop, crouch, crawl, balance and kneel. He must avoid concentrated exposure to temperature extremes, pulmonary irritants such as dusts and gases, and hazards such as dangerous machinery and unprotected heights. There are no other work related limitations. This is a reduced range of sedentary work as defined in 20 C.F.R. [§§] 404.1567(a) and 416.967(a). (AR 34.)

Plaintiff argues that the ALJ erred in assessing the opinions that are relevant to the RFC finding, specifically that "[t]he only medical sources to have assessed the functional limitations stemming from Mr. Velez's pulmonary embolism and its continuing, residual effects are treating pulmonologist [Dr. Stephen] Chen, examining internist Ella-Tamayo, and testifying medical adviser [Dr. Stephen] Wallach." (J. Stip. at 9-10.) Plaintiff argues that "[t]he issue here is whether Plaintiff's symptoms persist beyond March 27, 2014 at a disabling level," and Plaintiff argues that "Dr. [Stephen] Chen (and, to a less specific degree, medical adviser Wallach) believes that they do." (*Id.*) Plaintiff argues that "[b]ecause the only functionality assessments submitted by a treating source were discounted without sufficient rationales, they were improperly unincorporated into the determination of [Plaintiff's RFC] beyond March 27, 2014." (J. Stip. at 13.)[4]

---

[4] Plaintiff concedes that the August 30, 2013 questionnaire signed by Dr. Nassif only concerns "impairments other than [Plaintiff's] pulmonary embolism," and is therefore "not relevant to the specific issue of the functional impact of Mr. Velez's pulmonary impairment." (J. Stip. at 9-10, n. 2, citing AR 579-86.)

In particular, Plaintiff argues that multiple records evidence shortness of breath, chest pain, and dyspnea. (*See* J. Stip. at 10-11, n. 3.) In regard to Plaintiff's credibility, Plaintiff complains that the ALJ's focus on individual examinations where Plaintiff voiced no complaints about chest pain or dyspnea obscure the overall record which clearly shows repeated complaints about those symptoms. (*See, e.g.,* J. Stip. at 19-20.) Plaintiff notes, among other things, that Plaintiff made a trip to an emergency room "prior to October 28, 2013" due to shortness of breath and chest pressure. (J. Stip. at 11, n.3, citing AR 626.)

In light of the whole record, the Court finds that the ALJ's rejection of the opinions from Dr. Stephen Chen are not sufficiently specific and legitimate, even assuming, *arguendo*, that Dr. Stephen Chen's opinions about Plaintiff's RFC are "contradicted." *See Lester,* 81 F.3d at 830; *Holohan,* 246 F.3d 1195 at 1202-03; *Magallenes,* 881 F.2d at 751. Likewise, the ALJ has not set out specific, clear, and convincing reasons for discrediting the credibility of Plaintiff's complaints of shortness of breath, chest pain, and dyspnea. *See Treichler,* 775 F.3d at 1102.

First, the September 4, 2013 letter from Dr. Stephen Chen poses a formidable barrier to a finding that Plaintiff retains the RFC to return to the workforce. (*See* AR 509.) Dr. Stephen Chen treated Plaintiff from the time of his hospitalization for his pulmonary embolism in January 2013 onward. The September 4, 2013 letter documents more than just ongoing pulmonary and DVT problems. The letter states that it is "probably a miracle" that Plaintiff survived, but opines that "[n]evertheless, patients who were treated with this condition remain at risk for development of pulmonary hypertension, if not recurrent pulmonary embolism." (*Id.*) Dr. Stephen Chen opined that "[t]he pressure within the pulmonary arteries are so great that with any form of exertion, the pressure can increase and patients can develop sever dyspnea and near syncope to actual syncope." (*Id.*) As noted, Dr. Stephen Chen compared Plaintiff's "dyspnea on exertion" condition to the "New York Heart Association Class 3" listing. (*Id.*)

While the ALJ called this comparison "vague," the Court does not find that criticism supported in light of the whole longitudinal record of Plaintiff's history with Dr. Stephen Chen. And while the ALJ points out instances where Plaintiff apparently made no complaints of shortness of breath, chest pain, or dyspnea at certain individual examinations, other records evidence such complaints, apparently from at least March 2013 through February 2014, and, in particular, a record mentions an ER visit before October 28, 2013. *See, e.g.,* AR 569, 572-74, 576, 625-26. In the Court's view, the fact that these complaints are episodic and may come and go does not convincingly establish that Plaintiff has the RFC to exert himself and work, even at only a sedentary level, without being at risk of dyspnea or hypertension. Dr. Stephen Chen also noted in his September 4, 2013 letter that Plaintiff's "near death experience has prompted him to quit smoking already and he is dieting to lose weight," but he also opined that "[h]owever, the psychological burden also weighs on him, leading to development of anxiety and depression." (AR 509.)

The Court notes further that, to the extent that the ALJ relied on the March 27, 2014 report from Dr. Weber Chen, or to the extent that the ALJ's opinion depends on the later July 23, 2014 report from Dr. Weber Chen that was in the record reviewed by the Appeals Council, while those reports may show medical improvement in regard to pulmonary embolism and DVT, neither of those reports convincingly shows that Plaintiff has the RFC to return to the workforce. In particular, both reports apparently document high blood pressure (*i.e.,* 149/88 on March 27, 2014 and 141/83 on July 23, 2014) that could lead to hypertension, as Dr. Stephen Chen posited.

The Court also notes that the ME Dr. Wallach opined at the second hearing on May 8, 2014 that Plaintiff still had "the effects" of pulmonary hypertension. (*See* AR 58.) While the ALJ legitimately noted that the ME may have been mistaken about the records regarding Plaintiff's pulmonary artery pressure (*see* AR

38, *cf.* AR 60-61), the ALJ's criticism that the ME "could not provide a good explanation why the claimant's allegations of shortness of breath and chest pain were not corroborated by the overall medical record" appears less convincing and legitimate, in light of the record as discussed above. *See, e.g.,* AR 569, 572-74, 576, 625-26. The ALJ also noted, while examining the ME at the second hearing, that a record evidenced "chest pain occasionally" (*see* AR 64, citing Ex. 13F at 4 [AR 598]); but the ME stated that "sometimes everything is not recorded" and "[h]is pulmonologist, you know, does talk about shortness of breath." (AR 64.) The ME went on to note the ambiguities in the records about functional limitations, and noted that Dr. Stephen Chen's "RFC in fall of last year said he's still limited"; and the ME said that "one of the things you can do is put him on a treadmill and see what he can do." (AR 66.) The ME went on to state that "there's other tests that could be done and . . . they can check his oxygen, they can do an exercise test with oxygen to see if he's still really limited, but I think he never quite made it back to where he was." (AR 67.) In response to the ALJ's question about "the best way" to measure pulmonary artery pressure and lung function, the ME answered "a treadmill [test] with oxygen, a diffusing capacity." (*See* AR 67-68.)

Furthermore, the Plaintiff's representative asked the ME at the second hearing whether it was reasonable, given Plaintiff's medical history, that Plaintiff could be "as limited as he's describing periodically." (AR 69.) The ME essentially answered that it was, noting that Plaintiff "said he's short of breath. He says it takes him two hours to vacuum and he can lift 10 pounds and he says he can't walk too far," and the ME said "I have to believe what he's saying." (AR 69.) Plaintiff's representative also asked the ME "is it reasonabl[e] to say that there are some days that the claimant would be as limited as he is describing?" and the ME said "I believe there are." (AR 70.) In the Court's view, that testimony from the ME, based as it is on the overall record up to the date of the second hearing on May 8, 2014, buttresses Plaintiff's credibility.

Likewise, the Court finds that the ALJ has not offered sufficiently specific, clear, and convincing reasons for discounting Plaintiff's credibility about his subjective complaints, and in particular his complaints about shortness of breath, chest pain, and dyspnea. For example, the ALJ notes an otherwise-unidentified record from April 2013 record where Plaintiff stated that he experienced shortness of breath "at times" when walking up one flight of stairs. (AR 37, citing unidentified "*id.*") As discussed above, the fact that Plaintiff's shortness of breath, chest pain, or dyspnea may be episodic and occur only "at times" does not preclude a functional limitation that could restrict work, or make it likely, as both Dr. Stephen Chen and Dr. Nassif opined, that Plaintiff would miss three days or more of work per month. Also, the fact that Plaintiff may be capable of certain daily activities, such as doing household chores and walking his kids to school (which Plaintiff stated can take 45 minutes just to walk two or three blocks (*see* AR 53)), does not necessarily mean that Plaintiff can handle the demands of the workplace, or avoid hypertension brought on by exertion.

Furthermore, the ALJ's discussion of the handwriting in various records is of limited probative value and ultimately unconvincing. For example, to the extent that the ALJ questions whether it is Plaintiff's handwriting on some or all of the "Pulmonary Impairment Questionnaires" signed by Dr. Stephen Chen, the Court notes that the ALJ does not suggest, much less prove, fraud, and Dr. Stephen Chen's opinions about Plaintiff's functional limitations are essentially consistent throughout the record, particularly in light of his September 4, 2013 letter.

**C.**    **Remand for Further Consideration Is Warranted**

Taken together, the Court finds that the ALJ has not offered sufficiently specific and legitimate reasons for rejecting the opinions of Dr. Stephen Chen and has not offered sufficiently specific, clear, and convincing reasons for discounting Plaintiff's credibility. The Court notes the presumption of continuing disability which the ALJ must overcome after the ALJ has found that Plaintiff was disabled

during an earlier "closed period." *See, e.g., Attmore,* 827 F.3d at 876; *Parra,* 481 F.3d at 748. The Court also notes that the ALJ has not had the opportunity to consider the significance of the most recent "Pulmonary Impairment Questionnaire" dated October 6, 2015 from Dr. Stephen Chen, which was submitted to the Appeals Council but was not before the ALJ, and which Dr. Stephen Chen approved even after Dr. Weber Chen had issued his two earlier PE/DVT reports in March and July 2014. (*See* AR 634-39; *cf.* AR 617-18, 628-29.) The Ninth Circuit has commented that the submission of such new evidence can warrant a remand to allow the ALJ to consider it. *See, e.g., Gardner v. Berryhill,* 856 F.3d 652, 658 (9th Cir. May 9, 2017) (stating that, as general rule, where critical portions of treating physician's opinion were presented for the first time to the Appeals Council, and Appeals Council considered that evidence and incorporated it into the record, remand is a "foregone conclusion" and the appropriate remedy is for the district court to remand the case back to the ALJ to consider the additional evidence (citing *Harman v. Apfel,* 211 F.3d 1172, 1180 (9th Cir. 2000))).

A district court may reverse the decision of the Commissioner with or without remanding the case. *See Dominguez v. Colvin,* 808 F.3d 403, 407 (9th Cir. 2015), as amended (Feb. 5, 2016) (citing *Treichler v. Comm'r of Soc. Sec. Admin.,* 775 F.3d 1090, 1099 (9th Cir. 2014)). However, if the reviewing Court has reviewed the whole record and determined that it is not fully developed or free from conflicts and ambiguities, the proper course is to remand the case to the Agency for additional investigation or explanation. *Id.*

Here, in view of the medical records and Plaintiff's complaints, both indicating shortness of breath, chest pain, and dyspnea, and the possibility of pulmonary hypertension upon exertion, there remain significant questions about whether Plaintiff retains the RFC to do other work in spite of his apparent medical improvement. As the ME opined, further testing may resolve these issues. Likewise, further development of the record, particularly with records from Dr.

Stephen Chen and Dr. Weber Chen if they can be obtained, or with further testimony from Plaintiff or family members, could be useful. Accordingly, the Court finds that remand is warranted. *See Dominguez,* 80 F.3d at 407.

## VII.

## CONCLUSION

For the reasons stated above,

IT IS ORDERED that the decision of the Commissioner is REVERSED, and this case is REMANDED for further proceedings consistent with this Memorandum Opinion and Order.

IT IS FURTHER ORDERED that the Clerk of the Court shall serve copies of this Memorandum Opinion and Order and the Judgment on counsel for plaintiff and for defendant.

LET JUDGMENT BE ENTERED ACCORDINGLY.

DATED:   June 20, 2017

JOHN D. EARLY
United States Magistrate Judge